IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AVALON CONSTRUCTION—RUIDOSO, LLC,

  Plaintiff,

v.                CV 13-0100 GBW/WPL

MUELLER COMPANY INC.
and HD SUPPLY WATERWORKS, LTD.,

  Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION TO COMPEL**

This matter is before me on the Motion to Compel Discovery Answers filed by Avalon Construction—Ruidoso, LLC ("Avalon") (Doc. 50) and the response brief filed by Mueller Company, Inc. ("Mueller") (Doc. 54).[1] Having considered the record before me and the relevant law, and otherwise being fully advised in this matter, I grant in part and deny in part Avalon's motion.

**BACKGROUND**

Avalon's First Amended Complaint alleges defective product design or manufacture and breach of implied warranty by Defendants. (Doc. 3.) Avalon, a commercial property developer, purchased a copper meter yoke (also referred to as a "water yoke") for use on property that it was constructing in Ruidoso Downs, New Mexico. (*Id.* at 2.) Avalon alleges that the water yoke, which was manufactured by Mueller and sold by HD Supply Waterworks, Ltd., failed to provide an adequate seal against leakage, leading to an underground water leak that caused damage to the Ruidoso Downs property. (*Id.* at 2-3.)

---

[1] Avalon did not file a reply brief.

After holding a Rule 16 initial scheduling conference on August 12, 2013, I issued a scheduling order setting various pretrial deadlines, including expert disclosure deadlines of November 12, 2013 for Avalon and January 13, 2013 for Defendants. (Doc. 28.) Discovery in this action has been contentious ever since, leading to numerous telephonic status conferences in the space of one month (*see* Doc. 44; Doc. 51; Doc. 58) and the cancellation of a settlement conference originally scheduled for November 2013 (Doc. 45). This contention is reflected in correspondence provided to chambers prior to the status conferences and in exhibits filed with the parties' discovery motions. (*See, e.g.*, Doc. 50 Exs. A-C; Doc. 53 Exs. A-D.) Suffice to say that the parties have disagreed on matters varying from the appropriateness of certain discovery responses to the existence of private agreements on expert deposition dates.

On November 20, 2013, Avalon filed the instant motion to compel, in which it urges me to "strike the objection 8 [*sic*] of work produce [*sic*]; attorney client privilege[,] unduly burdensome and vagueness from the reason Defendant [Mueller] has made only a generic boilerplate objections [*sic*] without showing a sufficient basis; [and] order Defendant to answer, without objection," Interrogatory Nos. 3 through 16, Request for Admission ("RFA") No. 1, and Request for Production ("RFP") Nos. 1 and 2. (Doc. 50 at 2.) As I interpret this statement, Avalon asks that I overrule Mueller's objections to these discovery requests and that I compel Mueller to answer. Other than the statement quoted above, Avalon does not state any grounds for its motion. Mueller filed a lengthier response in which it outlined the basis for its objections to Avalon's requests. (Doc. 54.)

## LEGAL STANDARD

A party may serve on another party interrogatories or requests for production on any matters covered by Rule 26(b). *See* FED. R. CIV. P. 33(a)(2), 34(a). That rule allows a party to

seek discovery as to "any nonpriviliged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). "Relevancy is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action." *Smith v. MCI Telecomms. Corp.*, 137 F.R.D. 25, 27 (D. Kan. 1991). Still, "broad discovery is not without limits," *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995) (citation omitted), and the concept of relevance should not be stretched so as to encourage a "fishing expedition," *see Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1169 (10th Cir. 2000). "[T]he party resisting discovery bears the burden of establishing lack of relevance." *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 309 (D. Kan. 1996) (citation omitted). "When relevancy is not apparent, [however,] it is the burden of the party seeking discovery to show the relevancy of the discovery request." *Id.* (citation omitted). The decision to grant or deny a motion to compel is left to the sound discretion of the trial court. *Rodriguez v. IBP, Inc.*, 243 F.3d 1221, 1230 (10th Cir. 2001) (citation omitted).

## DISCUSSION

As an initial matter, Mueller argues that Avalon's motion fails to "state with particularity the grounds for seeking the order" as required under Rule 7(b)(1)(B) and fails to cite any authority pursuant to Local Rule 7.3(a). It is true that the essence of Avalon's request is a single poorly phrased, typo-ridden sentence that fails to cite any authority and fails to state any grounds for compelling answers to the discovery requests it identifies. (*See* Doc. 50 at 2.) Avalon's motion plainly fails to meet the requirements of the Federal and Local Rules of Civil Procedure. That said, Avalon's motion included ample supporting materials (*see* Doc. 50 Exs. A-D), and Mueller itself, as the objecting party, bears the burden of demonstrating the inappropriateness of

any discovery requests that are facially relevant, *see Pulsecard*, 168 F.R.D. at 309. Given these factors, I will not deny Avalon's motion outright since I have sufficient materials available to consider the motion on the merits.[2]

**Interrogatory No. 3** seeks information on "each fact or lay witness [Mueller] will, or may call, to testify at trial" and the substance of the witnesses' testimony. (Doc. 50 Ex. D at 3.) Similarly, **Interrogatory Nos. 4 and 7** request information on all exhibits and evidence that Mueller "propose[s] to offer into evidence at trial." (*Id.* at 4, 6.) Rather than requesting information relevant to the allegations in Avalon's complaint or Mueller's defenses, these interrogatories call for "decisions by counsel about their trial strategy." *See IBP, Inc. v. Mercantile Bank of Topeka*, 179 F.R.D. 316, 323 (D. Kan. 1998). Moreover, Mueller has already provided information on fact witnesses and exhibits in its initial disclosures (*see* Doc. 26 at 5, 8 (joint status report)), and it remains obligated under Rule 26(a)(3) and the scheduling order (Doc. 28 at 3) to provide additional information on trial witnesses and exhibits before trial. Finally, Mueller responded that it had not yet made any determination regarding fact witnesses and exhibits that it will offer at trial (Doc. 50 Ex. D at 4), and Avalon does not explain why this answer is inadequate. Avalon's motion is denied as to Interrogatory Nos. 3, 4, and 7.

**Interrogatory No. 5** seeks the names and contact information for "all persons from whom [Mueller and its agents or attorneys] have taken statements regarding this case, whether

---

[2] I should also note that Avalon's motion is arguably untimely. Mueller mailed its discovery responses to Avalon on October 7, 2013 (*see* Doc. 38), presumably meaning that Avalon received the responses on or after October 8, 2013. However, Avalon did not file the instant motion until November 20, 2013 (Doc. 50). Local Rule 26.6 requires a party served with objections to discovery requests to file any motion to compel within 21 days of service of the objections. Notably, plaintiff's counsel contacted my chambers to arrange for a status conference to discuss its objections before the apparent expiration of the objection deadline. Accordingly, I noted at the November 6 status conference that I would be inclined to relax that deadline in this case. (*See* Doc. 44.) Avalon took rather generous advantage of the relaxed deadline by failing to file the instant motion for another two weeks. However, because Mueller does not challenge the timeliness of the motion, and because I find that justice is best served by addressing the motion on the merits, I will overlook the timing of its filing.

written, oral or stenographic, by mechanical, electrical or other recording means, or transcription thereof[,] and the substance of each such statement." (*Id.* at 4-5.) Avalon provided that this interrogatory "may be answered by attaching a copy of each such statement taken." (*Id.*) Mueller argues that such statements are protected under the work product doctrine, which prevents a party from discovering "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." *See* FED. R. CIV. P. 26(b)(3)(A). Mueller also claims that any interviews with its employees would be protected via the attorney-client privilege. (Doc. 54 at 6.) Finally, Mueller argues that the term "statements" is insufficiently defined. (*Id.*)

I am confident that Avalon's list of adjectives to the word "statements" (*see* Doc. 50 Ex. D at 4-5) provides Mueller with a sufficient understanding as to Avalon's meaning for that term in Interrogatory No. 5. Further, although Mueller is correct that any statements themselves may be protected under the work product doctrine, the facts communicated by these statements and the facts regarding the statements' creation are not subject to the same protections. *See In re Grand Jury Proceedings*, 616 F.3d 1172, 1185 (10th Cir. 2010) (citing *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995)). Finally, Mueller has only invoked the attorney-client privilege in the abstract, "to the extent [its] counsel has interviewed [its] employees." (*See* Doc. 54 at 6.) Yet, while the attorney-client privilege clearly applies to communications between counsel and Mueller's officers and agents responsible for directing its actions in response to legal advice, Mueller has not justified its applicability to other employees, whose statements to counsel are subject to this privilege only in limited circumstances. *See Upjohn Co. v. United States*, 449 U.S. 383, 391-94 (1981); *see also E.E.O.C. v. Outback Steakhouse of Fla., Inc.*, 251 F.R.D. 603, 610 (D. Colo. 2008) (citing *Upjohn*, 449 U.S. at 394). Accordingly, Avalon's motion

is granted as to Interrogatory No. 5, and Mueller must provide a full and complete response to that interrogatory. To the extent any statements are protected by the attorney-client privilege or the work product doctrine, Mueller must provide a privilege log pursuant to Rule 26(b)(5).

**Interrogatory No. 6** seeks the names and contact information of persons "who have knowledge relevant to the subject matter of this action" as well as "the subject matter of such knowledge." (Doc. 50 Ex. D at 5.) As with Interrogatory No. 5, Mueller argues that such information is protected by the work product doctrine, relying on language from *Upjohn*. (*See* Doc. 54 at 6-7 (citing 449 U.S. at 398-99).) However, Mueller misconstrues the relevant passage from *Upjohn*, which discusses protection against the disclosure of statements themselves and of an attorney's mental impressions under the work product doctrine but does not address disclosure of relevant facts provided in such statements. *See Upjohn*, 449 U.S. at 398-400; *see also In re Grand Jury Proceedings*, 616 F.3d at 1185 (citation omitted). The names and contact information of persons with knowledge relevant to a claim or defense in this action, and the nature of this knowledge, are plainly relevant under Rule 26(b)(1). Avalon's motion is granted as to Interrogatory No. 6, and Mueller must provide a full and complete response to that interrogatory and, if necessary, a privilege log pursuant to Rule 26(b)(5).

Avalon expressly requests that I overrule Mueller's objections to **Interrogatory No. 8** and compel Mueller to answer the interrogatory. (*See* Doc. 50 at 2.) However, Mueller did not object to Interrogatory No. 8, instead responding that it lacked sufficient information to provide a complete answer. (Doc. 50 Ex. D at 6.) Avalon does not state any grounds for compelling any additional response to that interrogatory. Therefore, I deny Avalon's motion to the extent that it seeks any additional response to Interrogatory No. 8.

**Interrogatory No. 9** asks whether Mueller "sell[s] a similar water yoke directly to the public," and if so, how the marketing and direct sale of the yoke to the public is accomplished. (Doc. 50 Ex. D at 6.) Mueller objected that the term "directly to the public" was vague and ambiguous, but nonetheless it answered that it "does not sell or distribute meter yokes directly to the public" as it understands the phrase. (*Id.*) This answer appears to be adequate, and Avalon does not explain why this answer does not suffice. Therefore, Avalon's motion is denied as to Interrogatory No. 9.

**Interrogatory No. 10** seeks information on the existence or nature of Mueller's warranties or guarantees regarding "the water yoke purchased for the benefit of Plaintiff." (*Id.* at 7.) Mueller's objection regarding the ambiguous nature of the phrase "for the benefit of Plaintiff" (*id.*) is overruled, since the phrase is apparently intended simply to identify the water yoke that is the subject of this action. More complicated is Mueller's statement that it is unable to confidently provide an answer with respect to the subject water yoke, since the parties have not satisfactorily identified the sale date for the yoke and therefore cannot determine with certainty the warranty or guarantee in place at the time of sale. Mueller states that it provided Avalon with the limited warranty that would have been in effect in February 2008, the time period in which it believes the water yoke at issue here was sold. (Doc. 54 at 8.) Avalon does not contest the sufficiency of this answer. Accordingly, its motion is denied with respect to this interrogatory.

**Interrogatory No. 11** asks for information on any "retail trade or industry standards or any state, local or federal regulations" that apply to "the manufacturer and sale" of the subject water yoke; the substance of such standards or regulations; and "every affirmative steps [*sic*] Mueller took to comply with the regulations." (Doc. 50 Ex. D at 7.) Mueller objects that this interrogatory is not sufficiently limited to the standards or regulations related to the alleged leak

of the subject water yoke, and it complains that Avalon is seeking "to have Mueller conduct legal research on behalf of [Avalon]." (*Id.*) Mueller explains that "there are myriad regulations and standards related to the brass components, solder, and other components of the meter yoke that have *no bearing* on the alleged defect in the copper tubing at issue in this case." (Doc. 54 at 9.) Granting that, Mueller apparently concedes that some standards and regulations are relevant insofar as they relate to the events underlying this action. (*See id.*) Mueller will therefore identify any standards or regulations which may be "related to the allegation that the copper connection on the outlet side of the meter leaked" (*see id.*) and will list the affirmative steps it took to comply with the regulations and standards when manufacturing the subject water yoke. *See Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 650 n.6 (10th Cir. 2008) (noting that courts may work with parties to narrow overbroad discovery requests).

**Interrogatory No. 12** seeks information on "other litigation initiated alleging defective manufacture[] of the same or similar water yoke." (Doc. 50 Ex. D at 8.) Mueller objects first that the interrogatory fails to give parameters for a "similar meter yoke," arguing that discovery "must be limited to other products that are substantially similar to the subject product and experienced the same failure mode." (Doc. 54 at 9-10). Yet the cases cited by Mueller refer to this standard only for the admissibility of evidence, and for good reason: Rule 26(b)(1) provides a broader standard, allowing for the discovery of any relevant nonprivileged information that "appears reasonably calculated to lead to the discovery of admissible evidence." Avalon's request for information on litigation alleging defective manufacture of "the same or similar" water yokes meets this standard.

Mueller's second objection, to the lack of temporal limitations on Avalon's request (Doc. 54 at 10), is not without merit, even if its citations to an inapplicable Treasury Department

regulation (*id.* (citing 12 C.F.R. § 509.24(b) (2013))) and a case specifically focusing on the employment law context (*id.* (citing *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 212-13 (D. Kan. 2002))) are puzzling. Still, some leeway is necessary so that information may be discovered when its likely benefit outweighs the burden or expense of production. *See* FED. R. CIV. P. 26(b)(2)(C). This is especially the case where, as here, the exact manufacture date of the subject water yoke is uncertain. Mueller believes that the water yoke in question was sold approximately six years ago. (*See* Doc. 54 at 8.) Therefore, to the extent that it has not already done so,[3] Mueller will provide the requested information on litigation alleging defective manufacture of the same water yoke model or any similar Mueller model water yoke manufactured within the last ten years.

Similarly, **Interrogatory No. 13** requests information on "any complaint of defect or damages resulting from a similar water yoke" prior to the events underlying this litigation. (Doc. 50 Ex. D at 8.) Mueller raises the same objections regarding the substantive and temporal scope of the interrogatory that it brings with respect to Interrogatory No. 12. (Doc. 54 at 10-11.) As such, the same approach to Interrogatory No. 13 is appropriate. Mueller will provide the requested information on complaints of defect or damage resulting from the same or any similar Mueller model water yoke manufactured within the last ten years.

**Interrogatory No. 14** requests a list of and records relating to "the quality control protocol or testing in place at the location of manufacturer including the tests conducted[;] qualities measured; the manner and frequency with which the tests are performed; [and] the purpose of the tests." (Doc. 50 Ex. D at 9.) Because the interrogatory is not limited to quality control procedures related to the manufacture of the subject water yoke, Mueller objects that it is

---

[3] Mueller has already averred that it is not aware of "any other litigation alleging defective manufacture of a Mueller copper meter yoke." (Doc. 50 Ex. D at 8.)

overbroad, unduly burdensome, and unlikely to reveal relevant or admissible evidence. (*Id.* at 9-10.) I agree that the quality control procedures that are unrelated to the manufacture of the water yoke model at issue here are unlikely to reveal information relevant to the claims and defenses in this action. To the extent that it has not already done so, Mueller will provide a list of and records relating to the requested quality control procedures with respect to the model of the subject water yoke.

**Interrogatory No. 15** asks whether Mueller has recalled "similar water yokes in the last 10 years due to defect in the manufacture of same." (*Id.* at 10.) Mueller objected to the vague use of the term "similar water yokes," but it also stated that it has not recalled the subject water yoke or any other copper yokes in the last ten years for manufacturing defects. (*Id.*) This answer appears to satisfy the interrogatory, and Avalon does not explain how it fails to do so. As such, Avalon's motion is denied with respect to Interrogatory No. 15.

**Interrogatory No. 16 and RFA No. 1** are intertwined. RFA No. 1 asks Mueller to admit or deny that the subject water yoke "was defective to the extent it would not properly seal." (*Id.*) Although Mueller objects that this request is vague, ambiguous, and overbroad for "fail[ing] to identify the alleged defect" or "the cause of the alleged failure to seal" (*id.* at 11), I overrule this objection since the language of the RFA provides sufficient guidance to allow Mueller to answer. Mueller also objects that the request "fails to state when the alleged failure to seal originated" (*id.*), to which Avalon responded that it would be satisfied with an answer referring to "the condition of the product at the time that it was placed in channels of commerce" (Doc. 50 Ex. B at 1). Avalon's proffered temporal limitation is reasonable, and it appears that Mueller does not object to the limitation (*see* Doc. 54 at 13). Therefore, Mueller's answer to RFA No. 1 should be

with respect to the condition of the subject water yoke at the time that it was placed in channels of commerce.

Relatedly, if RFA No. 1 is anything other than an unqualified admission, Interrogatory No. 16 asks for "each fact relied upon in formulating an unequivocal denial," the identities of those with knowledge of such facts, the specific facts that each such person has knowledge of, the source of these facts, and the identity of each document substantiating the denial. (Doc. 50 Ex. D at 11.) Because the fulcrum issue in this case is whether the subject water yoke was a defective product, I agree with Mueller that this request is a contention interrogatory. *See Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M. 2007). As recognized in *Lucero*,

> [c]ontention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents. Interrogatories may ask for the material or principal facts that support a party's contentions, and contention interrogatories that do not encompass every allegation, or a significant number of allegations, made by a party are proper. Courts have considerable discretion in determining when contention interrogatories must be answered, and there is considerable support for deferring answers to contention interrogatories until after a substantial amount of discovery has been completed.

*Id.* (internal citations omitted).

Mueller raises the same work product argument that I rejected with respect to Interrogatory Nos. 5 and 6 (*see* Doc. 54 at 14), and I reject the argument again here for the same reason—Avalon is properly seeking facts rather than strategies and legal impressions. *See Resolution Trust Corp.*, 73 F.3d at 266. However, Mueller also argues that it is premature to expect an answer to a contention interrogatory on "the ultimate issue in this case" at this stage of discovery. (*See* Doc. 54 at 13.) I agree. Mueller still has until January 13, 2014, to provide any expert reports, and discovery does not end until April 9, 2014. Mueller should not be required to identify "every evidentiary fact, details of testimony of supporting witnesses and the contents of

11

supporting documents" relating to its defenses in a contention interrogatory. *See Lucero*, 240

F.R.D. at 594. Mueller must still answer RFA No. 1 and Interrogatory No. 16, but it is only

required to do so by the end of discovery. *See* FED. R. CIV. P. 33(a)(2), 36(a)(3). When it does so,

Mueller need not provide a narrative account of its case in response to Interrogatory No. 16, but

should set forth "the material or principal facts that support [its] claims" and "identify the

documents that support [its] claims." *See Lucero*, 240 F.R.D. at 595. To the extent any requested

information is protected by the attorney-client privilege or the work product doctrine, Mueller

must provide a privilege log pursuant to Rule 26(b)(5).

**RFP No. 1** asks Mueller for "all documents relevant to" its interrogatory answers. (Doc.

50 Ex. D at 12.) As Mueller points out (Doc. 54 at 14), this request fails to identify documents

with the "reasonable particularity" required under Rule 34(b)(1)(A). Because I do not know what

Avalon is requesting, I cannot evaluate whether any responsive documents would be protected

from disclosure. Is Avalon seeking all trial documents including statements taken from potential

witnesses as requested in Interrogatory No. 5? (If so, such documents may be protected under the

work product doctrine.) Is it seeking all documents relating to any other water-yoke litigation

discovered via Interrogatory No. 12? (If so, the attorney-client privilege could apply.) Would all

documents addressing the lack of product recalls as sought under Interrogatory No. 15 be

relevant to the claims or defenses in this action? Without any reasonable particularity, the

relevance of documents sought by this RFP is not facially apparent, and Avalon has failed to

otherwise demonstrate relevance as it must. *See Pulsecard*, 168 F.R.D. at 309. Avalon's motion

is denied as to RFP No. 1.

**RFP No. 2** simply asks, "Please produce every exhibit which you will introduce at trial."

(Doc. 50 Ex. D at 12.) Rather than seeking exhibits that are relevant under Rule 26(b)(1), this

request effectively seeks information on Mueller's trial strategy by requesting that Mueller

disclose the documents it intends to introduce at trial. As discussed with respect to

Interrogatories 3, 4, and 7, such a request is not proper. Moreover, as I noted at the November 6,

2013 status conference (*see* Doc. 44), the production of exhibits is governed by this Court's

orders (*see, e.g.*, Doc. 36 at 2-3), and Mueller may satisfy its obligations with respect to exhibits

by adhering to the Federal Rules of Civil Procedure and this Court's scheduling orders. Finally,

Mueller states that it has not yet decided which exhibits to offer at trial (Doc. 50 Ex. D at 12),

which is an adequate answer at this stage of proceedings. Avalon's motion is denied as to RFP

No. 2.

## CONCLUSION

Avalon's motion to compel is denied with respect to RFP Nos. 1 and 2 and Interrogatory

Nos. 3, 4, 7, 8, 9, 10, and 15. With respect to RFA No. 1 and Interrogatory 16, Mueller will

provide answers as described above before the termination of discovery. With respect to RFP

Nos. 5, 6, 11, 12, 13, and 14, Mueller will provide answers as described above no later than **two

weeks** from the filing of this Order.

IT IS SO ORDERED.

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.